MINARIK, PLAINTIFF-APPELLEE, v. NAGY ET,
DEFENDANTS-APPELLANTS.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26285. Decided October 24, 1963.

Messrs. *Gurney & Miller, Mr. Ralph A. Miller,* for plaintiff-appellee.

Mr. *Bronis J. Klementowicz,* director of law, Mr. *Richard B. Mills* and Mr. *M. Eugene Farley,* assistant directors of law, for defendants-appellants.

*Per Curiam.* This is an appeal on questions of law from a judgment entered in the Court of Common Pleas of Cuyahoga County.

George Minarik filed an action in said court claiming that John S. Nagy, Commissioner of the Division of Recreation of the City of Cleveland, Robert Keefe, Superintendent of Maintenance of the Division of Recreation of the City of Cleveland, Lawrence J. Young, Secretary of the Civil Service Commission of the City of Cleveland, Roger Hornyak and Harry Johnson "maliciously conspired among themselves to maliciously and illegally manipulate the civil service list and falsify the payroll classification to deprive this plaintiff of his legal position as painter No. 4 of the Division of Recreation of the City of Cleveland, Ohio." After a lengthy trial the jury returned a verdict against all defendants, except Harry Johnson, in the amount of $7,000.00 compensatory damages and $20,000.00 as punitive damages. Plaintiff accepted a remittitur ordered by the trial court and judgment was entered in the sums of $2,500.00 compensatory damages and $4,000.00 punitive damages. The defendants appeal from that judgment.

We have read the extensive bill of exceptions carefully and have studied the numerous exhibits attached thereto and determine and, therefore, hold that the record discloses no evidence of a substantial and probative nature that Roger Hornyak and Lawrence J. Young entered into any conspiracy to deprive the plaintiff-appellee, George Minarik, of his legal position as painter No. 4 of the Division of Recreation.

With respect to defendants, John S. Nagy and Robert Keefe, however, we determine and, therefore, hold that from the evidence reasonable minds might reach different conclusions upon the question of a conspiracy existing between said defendants to deprive plaintiff of his legal position as painter No. 4 of the Division of Recreation and that, as a consequence, such question of fact was for the jury.

It is stated in Cooley on Torts, Fourth Edition, page 234:

"The general rule is, that a conspiracy cannot be made the subject of a civil action unless something is done which without the conspiracy would give a right of action. *The damage* is the gist of the action in the conspiracy; and though the conspiracy may be said to be of itself a thing amiss, it must nevertheless until something has been accomplished in pursuance of it, be looked upon as a mere unfulfilled intention of several to do mischief. * * * When the mischief is accomplished, the conspiracy becomes important, as it affects the means and measure of redress; for the party wronged may look beyond the actual participants in committing the injury and join with them as defendants all who conspired to accomplish it. The significance of the conspiracy consists, therefore, in this: That it gives the person injured a remedy against parties not otherwise connected with the wrong. It is also significant as constituting matter of aggravation and as such tending to increase the plaintiff's recovery." (Emphasis added.)

And in 10 Ohio Jurisprudence (2d), 57, Conspiracy, Section 2, it is said:

"* * * conspiracy * * * viewed as a tort, is a malicious combination of two or more persons to injure another, in person or property, in a way not competent for one alone, *resulting in actual damage to him.*" (Emphasis added.)

And on page 60 of the above citation under Section 3 entitled "Generally; Necessity of Damage" it is stated:

"Conspiracy, in and of itself, furnishes no cause of civil action. *The gist of the civil action for conspiracy is the damage caused by acts committed pursuant to a formed conspiracy,* rather than the conspiracy itself; and unless something is actually done by one or more of the conspirators *which proximately results in damage,* no civil action lies against anyone." (Emphasis added.)

See *Hoffman* v. *Johnston*, 68 Ohio App., 19 at page 29, 36 N. E. (2d), 184; 15 Corpus Juris Secundum, 994, at page 1000.

The jury by its verdict decided that a conspiracy, as claimed, existed.

What actual damage directly attributable to the conspiracy is shown to have been suffered by this plaintiff?

We find, in the record before us, the essential facts bearing

on the question of the actual damage suffered by the plaintiff and directly attributable to the conspiracy to be very meager.

The record indicates that George Minarik and Roger Hornyak took a civil service test for painter on April 18, 1956, as a result of which Minarik placed eighth on the eligible list and Hornyak thirty-seventh. Minarik was then appointed painter to the Division of Recreation on November 7, 1956. Hornyak received a temporary appointment in the Division of Recreation as construction foreman. Minarik was laid off on February 1, 1957. Hornyak continued in his temporary appointment until June 10, 1957, when he received another temporary appointment as glazier in the same Division. On May 1, 1958, Minarik was ordered back to work as painter to the Division of Recreation and was again laid off on May 29, 1958. Work order cards, which we hold were admissible in evidence under Section 2317.40, Revised Code, show that Hornyak worked eleven days as painter with Minarik and other legally employed painters during the month of May, 1958, for a total of eighty-six hours and as a glazier four days for a total of nineteen hours. In the following month of June, Hornyak worked as a painter ten days for a total of seventy-three hours and as a glazier six days for a total of forty-one and a half hours. Hornyak resigned his position as glazier on June 30, 1958, and accepted an appointment as painter in another division of the city. Minarik accepted an appointment as painter offered him by the County Engineer on June 24, 1958.

No evidence, other than that portrayed above, appears in the record tending to prove that Hornyak engaged in any painting in the Division of Recreation while Minarik was on a lay-off list and unemployed and which, under Civil Service Rules, should properly have been allotted to Minarik. Only by such proof could actual damage to Minarik be shown.

It thus seems that in furtherance of the conspiracy, which the jury found to exist, Nagy placed Minarik on the layoff list on May 29, 1958, and Keefe kept Hornyak doing work as a painter in the Division of Recreation to which Minarik as No. 4 painter should have been assigned, and since Minarik was unemployed from such layoff date until June 25, 1958, these maneuvers on the part of Nagy and Keefe kept Minarik from employment to which he was lawfully entitled and caused Minarik to

suffer damages to the extent of the hours of painting put in by Hornyak. The use of Hornyak as a painter while he was a temporary appointee as glazier was an act in contravention to the rules of the civil service and those responsible for such violation can be held personally liable for the actual damage suffered by the person aggrieved and made to pay such punitive damages as the jury, in its discretion, sees fit to assess.

It appears, therefore, that the only actual damage to Minarik resulting directly from the conspiracy shown by the entire record was the loss of wages for some seventy-three hours of work as painter during the month of June, 1958.

The record also discloses that Hornyak was a nephew of Nagy and that such relationship was stressed beyond its due during the trial of the case.

Minarik's hourly wage in 1958 was $3.51. Thus, he was only entitled to $256.23 compensatory damages. In the face of such fact, a verdict by the jury of $7,000.00 compensatory damages and $20,000.00 punitive damages was so excessive as to patently indicate passion or prejudice on its part and the excess being produced by passion or prejudice vitiates the verdict in toto and excludes the power of the trial court to validate any part of it by the concurrence of the prevailing party. Moreover, it seems obvious that, if error of such magnitude entered into the measure of damages, it is most probable that passion or prejudice permeated the question of the right to recover against the parties, which necessarily vitiates the entire verdict.

The judgment in this case, consequently, should be reversed.

We cannot let pass without comment that Young testified to the fact that some thirty-eight hundred out of ten thousand employees of the city of Cleveland hold temporary appointments under Civil Service rules. This means that a sizable portion of the city employees hold positions without having taken examinations to qualify for appointments from a classified eligible list of the Civil Service as required by the Charter of the City of Cleveland and represents a breakdown of the Civil Service system to that extent. It seems to us that the city administration owes it to the electorate to provide sufficient monies for examinations so that both the letter and the spirit of Civil Service can be faithfully observed.

It is our conclusion, accordingly, that the judgment of the Court of Common Pleas be reversed, that final judgment be entered for defendants, Roger Hornyak and Lawrence J. Young, and that as to defendants, John S. Nagy and Robert Keefe, the cause be remanded for further proceedings according to law.

Exceptions. Order see journal.

Skeel, C. J., Kovachy and Corrigan, JJ., concur.